The plaintiff brought suit in the General County Court to recover $2,533.38 alleged to be the price of certain stocks purchased by her through the Central Bank and Trust Company from John F. Clark and Company and not delivered. The parties waived a trial by jury and the judge of the county court found certain facts, the material parts of which are as follows:
3. The Central Bank and Trust Company closed its doors and ceased business on 20 November, 1930, and was immediately taken charge of by the North Carolina Corporation Commission, which has been duly succeeded in said work by the Commissioner of Banks of North Carolina.
4. On or prior to 17 November, 1930, May O. Kelley ordered and directed the trust department of the Central Bank and Trust Company, with which she was doing business at said time, to purchase certain stocks described in the complaint. Said order was executed by said Central Bank and Trust Company through John F. Clark and Company, stock brokers, with local offices in Asheville, N.C. and with *Page 752 
membership on the New York Stock Exchange, and other exchanges, by purchasing said stocks on the New York Stock Exchange on 18 November, 1930. The Central Bank and Trust Company, through its bond department, was immediately notified of the execution of said order by said John F. Clark and Company, and of the amount of the purchase price. The purchase was duly confirmed by John F. Clark and Company who were thereupon notified by the Central Bank and Trust Company's bond department of the name of the purchaser on 18 November, 1930; and a check signed by the Central Bank and Trust Company's bond department, and drawn on said bank, covering the full amount of the purchase price of said stock was, on the forenoon of 19 November, sent by messenger with letter of confirmation, by the bond department of said Central Bank and Trust Company, to said John F. Clark and Company and the amount thereof was promptly charged to the account of the plaintiff, May O. Kelley, by said bank. John F. Clark and Company thereupon duly received and accepted said check sent it by the Central Bank and Trust Company in full payment for said stocks on 19 November, 1930, and on said date deposited same in the Haywood Street Branch of said Central Bank and Trust Company, where said John F. Clark and Company had been doing a banking business and keeping an account for a long time. Said check was, when deposited, endorsed by rubber stamp for deposit to credit of said Clark and Company and same was duly credited on said date to the account of said John F. Clark and Company sometime prior to 2 p.m. of said 19 November, 1930, and before the time for closing the doors of the bank for the day; all in accordance with the custom and practice of the said John F. Clark and Company and said bank in handling similar transactions.
5. The Central Bank and Trust Company, including its Haywood Street Branch, did not open its doors for business on 20 November, 1930, and was then and is now insolvent, and its affairs are being liquidated and wound up by the Commissioner of Banks of North Carolina, as aforesaid.
6. No official or employee of the Central Bank and Trust Company had any knowledge on 19 November, 1930, that the bank would not be open for business the next day.
7. John F. Clark and Company, and their main office in New York City, were duly notified by said Haywood Street Branch of the Central Bank and Trust Company of the deposit to their credit of said check covering the purchase price of said stock so purchased by May O. Kelley, and of the amount to their credit at the close of business on 19 November, 1930, by code telegram sent at 2:45 p.m. by said bank, 45 *Page 753 
minutes after the closing hour of the bank for the day; all in accordance with the custom and practice of the parties and the instructions of John F. Clark and Company theretofore given said bank.
8. The entire transaction was conducted in full accordance with the practice and custom of John F. Clark and Company in dealing with the Central Bank and Trust Company.
9. A resale of the stocks purchased by John F. Clark and Company for the benefit of the plaintiff, was made on the New York Stock Exchange with the pretended permission or authority of the said Chief State Bank Examiner then in charge of the affairs of the Central Bank and Trust Company on or about 21 November, 1930, but without the knowledge, consent, authority, or permission of the plaintiff, or any agent of hers, and on the representations by an agent of defendant, John F. Clark and Company, that the check given for the purchase money of the said stocks had not cleared on 19 November, 1930, which representation was false in fact and in law.
10. On 21 November, 1930, and in ample time for said John F. Clark and Company to repurchase said stocks on said New York Stock Exchange before the hour for closing said exchange for the day, the said Chief State Bank Examiner having learned that said check given by the Central Bank and Trust Company in payment for said stocks had cleared and had actually been credited to the account of John F. Clark and Company on 19 November, 1930, contrary to the representations of said John F. Clark and Company in that respect, requested and directed said John F. Clark and Company to repurchase for the benefit of plaintiff the stocks so sold by them for the alleged reason that the check given for their original purchase had not cleared, as aforesaid, but said John F. Clark and Company wrongfully and unlawfully refused so to do and informed said Chief State Bank Examiner that the matter had passed out of the control of the local office, and that he would have to take it up with their New York office.
11. John F. Clark and Company did resell said stocks of May O. Kelley on the New York Stock Exchange under the circumstances and on the date mentioned in the complaint in this action, and thereupon did actually receive the proceeds of said sale and have wrongfully and unlawfully converted same to their own use, and now refuse to turn same over to plaintiff, or to return to her the original purchase money paid by her for said stocks, or to make settlement of any sort with said plaintiff.
12. The amount of said original purchase price paid by plaintiff through John F. Clark and Company for said stocks amounted to $2,533.38; and there is no evidence before the court showing or tending *Page 754 
to show the amount for which said stocks were resold by said John F. Clark and Company on the New York Stock Exchange after the purchase thereof by plaintiff, as aforesaid.
The county court gave the plaintiff a judgment against John F. Clark and Company for $2,533.38 with interest from 19 November, 1930, and costs. On appeal to the Superior Court the judgment was affirmed, and Clark and Company excepted and appealed to the Supreme Court, assigning error.
The exceptions taken by the appellants relate to the admission and exclusion of evidence and to the denial of their motion for nonsuit. In our opinion none of the exceptions should be sustained. The court's findings of fact, which are supported by the evidence, are as conclusive as the verdict of a jury; and according to these findings the plaintiff's order for the purchase of stocks was executed by John F. Clark and Company, who made the purchase on 18 November, 1930. The bond department was immediately notified and the bank sent to Clark and Company a check for the purchase price. The check was received and accepted by Clark and Company in payment on 19 November, 1930, and was credited on their account and charged to the account of the plaintiff. The money represented by the plaintiff's check thus passed from her to the brokers and was subject to their order until the bank closed its doors. If the local offices had no authority to cash checks the plaintiff, who had paid the price of the stocks, was not affected by the limitation of which she had no knowledge. The brokers, having failed to account to the plaintiff, are responsible for her loss. There was no error in denying the motion for nonsuit.
The admission and exclusion of evidence which are the subject of most of the exceptions afford no adequate cause for a new trial. The first five refer to conversations with employees in the local offices, the "clearing" of checks, or to some hypothetical or collateral matter which, we think, could not have been prejudicial to the defendants, and the seventh, eighth, and ninth, to matters which would not modify the contractual relation between the plaintiff and the defendants. The answer to the question referred to in the tenth exception is not set out, and the evidence excluded subject to the eleventh and twelfth exceptions purported to show a restriction imposed by the New York office upon the local offices in Asheville to which the plaintiff was not a party. Upon an examination of the record we find
No error. *Page 755